## BELLAMY & SONS v. CATHCART ET AL.

1. **Surety**: ON BUILDER'S BOND: RIGHT TO SELF-PROTECTION: INDEMNIFYING MORTGAGE: PRIORITY OF LIENS. A builder entered into a contract with a county for the erection of a bridge, and he gave a bond for the performance of his contract. After he had begun the work, he purchased a farm with money paid him on the contract, and mortgaged the farm to the sureties on his bond to indemnify them as such until the bridge was built and accepted by the county. The sureties, in order to insure the performance of the contract, were obliged to advance money

to the contractor from time to time, and before the work was done they took another mortgage on the same land for the same purpose as the first one, but setting out in particular the sums so advanced, and which the mortgage was to secure. After the contract had been entered into and the first mortgage made, but before the execution of the second mortgage, plaintiffs began an action against the contractor on a debt which antedated the bridge contract, and subsequently, but after the date of the second mortgage, procured judgment thereon, which also became a lien on the land. *Held*—

(1) That the sureties had a right to protect themselves against liability on their bond by advancing money to the contractor to enable him to complete the bridge. (Compare *Tuttle v. Ind. Dist. of Harlan*, 62 Iowa, 422.)

(2) That the first mortgage was not discharged by the completion and acceptance of the bridge, but stood as a security for all money advanced by the sureties to the contractor on account of the bridge

(3) That the first mortgage was a lien on the land superior to plaintiff's judgment.

(4) That the second mortgage was not an abandonment of the first one, and did not in any way affect the question of priority as between plaintiffs and the sureties.

*Appeal from Marion District Court.*

SATURDAY, JUNE 25.

THIS is an action in equity. Both of the parties to the action claim to have liens upon eighty acres of land, and the contest is as to the validity of the liens and their priority. The court below decreed that the lien of the plaintiffs was prior and superior to that of the defendants. Defendants appeal.

*Ayres Bros.*, for appellants.

*J. D. Gamble*, for appellees.

ROTHROCK, J.—I. On the 5th day of July, 1880, one C. C. Collins entered into a contract with Marion county to build a wagon bridge across the Des Moines river in said county. The other defendants became his sureties on a bond to the county, given to secure the performance of the contract upon the part of Collins. At the time the bond was

executed and delivered to the county, Collins entered into an agreement with the defendant Kerr, who was one of the sureties, by which it was stipulated that, for the protection of the sureties, said Kerr should receive, control and pay out all money paid by the county for the erection of the bridge, as trustee for the sureties, and that, after the completion of the bridge, and all claims for material and labor should be paid, and the bondsmen released from liability, the balance of the money should be paid to Collins. Collins proceeded to erect the bridge. The original contract required that he should build the same for $10,259. On July 27, 1880, and in August and November of the same year, and in September, 1882, certain supplemental contracts were made between Collins and the county, by which certain alterations were made in the plan of the bridge, which largely increased its cost. These supplemental contracts were assented to by the sureties on the bond, and the whole amount paid by the county on the several contracts was $23,125. The bridge was completed and accepted by the county in June, 1883. When the bridge was completed, Collins was indebted to said sureties, on account of the building of the bridge, in the sum of about $1,490.84. This was the amount as found by the district court, and the evidence appears to sustain the finding. During the progress of the work, and in December, 1880, Collins purchased the land in controversy. At that time there were no outstanding obligations upon account of the work on the bridge, and Collins drew about $2,000 of bridge money and paid it on the land. He took the title thereto in the name of his wife. It appears to be conceded that Collins was then and is now insolvent, having no financial ability. At the time the conveyance was made to his wife, the bondsmen took a mortgage upon the land, which mortgage contained the following provision: That the same was given "as indemnity as bondsmen of C. C. Collins until the Des Moines river bridge, now under contract at Horn's ferry, in Marion county, Iowa, is completed and accepted by

the board of supervisors of Marion county, Iowa," and that at that time the mortgage sho·ld be void and of no effect.

Afterwards, and in July, 1881, another mortgage was taken upon the land and certain personal property by the bondsmen, which contained these provisions:  " To have and to hold unto the said parties of the second part, upon the following conditions, to-wit:   Whereas, said A. J. Kerr, T. S. Cathcart, R. H. Underhill and N. H. Bittenbender have heretofore and may hereafter sign bonds and contracts with said C. C. Collins, as sureties for the erection of a bridge across the Des Moines river, near Horn's ferry, in said county, and for the purchase of material and tools; and having signed with said C. C. Collins a note for six hundred dollars to the Knoxville National Bank as sureties, and having this day signed other notes for said Collins for the sum of five hundred dollars; and having heretofore signed other notes, bonds and contracts for said Collins, or advanced him money, or furnished him with property from time to time; now, if the said C. C. Collins shall hold each and all of said parties, A. J. Kerr, T. S. Cathcart, R. H. Underhill and N. H. Bittenbender, harmless by reason of having signed any such bonds, contracts, notes, or other obligations, and pay each and all of them any and all sums of money that they may have to pay by reason of such bonds, notes, contracts, and any money that they may furnish or advance to him, with ten per cent interest on all such sums from the time they or either of them have to pay the same, together with all costs, attorney's fees, and other expenses they may be to in the premises, with reasonable attorney's fees for the fore-closing of this mortgage and collecting such sums, then this obligation to be void; otherwise in full force and effect.

" C. C. Collins.

" Jennie B. Collins."

The money was actually borrowed from the bank, and it was received by one of the bondsmen, and paid out on account of the construction of the bridge.   And the evidence

shows that at the time the money was borrowed the sureties were compelled to make the loan, or the contract would have been forfeited and given up. The foregoing are the facts necessary to be considered in determining the claim made by the bondsmen. They claim that the mortgages are valid liens upon the land for the money advanced by them, and liabilities incurred in the construction of the bridge.

The claim of plaintiffs to a lien is based upon the following facts: C. C. Collins was indebted to the plaintiffs in the sum of about $700. This debt was incurred for lumber sold by plaintiffs to Collins in the years 1877, 1878, 1879 and 1880. It does not appear that any part of the debt was contracted after the bridge contract was entered into. A suit was brought on this contract, and a judgment recovered on the 21st day of January, 1881. Execution was issued, and returned " nothing made," and on the 25th day of May, 1881, the plaintiffs filed a creditor's bill, in which they demanded that the land be subjected to the payment of their judgment, because the title was made to the wife of Collins in fraud of his creditors. The bondsmen, being the mortgagees in the mortgage which was executed in December, 1880, were warned as defendants, and the claim was asserted that any interest they had in the land was junior to the plaintiff's judgment. The parties defendant were not served with an original notice. The cause was continued for several terms of the court, and after the second mortgage was taken, and on January 16, 1883, the plaintiffs filed an amended and substituted petition, in which they claimed that the second mortgage was junior and inferior to the plaintiff's judgment. The claim made by the plaintiffs is that, by the completion and acceptance of the bridge, the first mortgage was discharged and satisfied; and that the defendants acquired no rights, as against the plaintiffs, by the second mortgage, because of the pendency of the action to subject the land to the payment of the judgment at the time the second mortgage was made. Much of the argument of counsel consists of a dis-

cussion of the question whether the money that was paid upon the land belonged to the bondsmen, and whether, because of that fact, they were the equitable owners thereof by reason of a resulting trust. The question is also presented in argument whether the pending of the action was notice to the bondsmen of the claim made by plaintiffs to subject the land to the payment of their judgment, and whether this notice became ineffectual by the failure of the plaintiffs to serve the defendants with notice of the action.

We do not deem it necessary to discuss or determine these questions, for the reason that in our opinion the amount due to the bondsmen, or for which they are liable, must be held to be the superior lien upon the land. The theory upon which the plaintiffs argue the case, and upon which it was decided in the court below, was that the first mortgage was satisfied by the completion and acceptance of the bridge. In other words, the satisfaction of the mortgage is made to depend upon the naked fact of acceptance of the bridge, and the discharge of the bondsmen by the county. This, we think, is not a fair construction of the condition of the mortgage. The mortgage recites that it was given as *indemnity* to the mortgagees, as bondsmen of C. C. Collins. If it should be construed that the mortgage was satisfied when the bridge was accepted, even though the bondsmen were required to furnish the money to complete the work, the mortgage would be no indemnity at all. The true and only fair construction of the mortgage is that, when Collins should procure the acceptance of the bridge, and the defendants should be discharged from liability on their bond, and held harmless, by reason of having executed the same, the mortgage should become void. Without this it would be a misnomer to name the instrument an indemnifying mortgage. As we view it, this first mortgage was what might be called an open mortgage. It was given to secure the bondsmen against loss by reason of having signed the bond; and under their obligations upon the bond it was their right to protect themselves from loss by

all proper means. They were not required to fold their hands and await the default of Collins, and the forfeiture of this contract, and then defend an action for damages, or settle the damages, and, when the amount was ascertained, in that way set it up as the amount due on the mortgage. They had the right to do as they did,—take an assignment of the contract, and, if necessary, furnish the money to complete the work, and resort to any security or indemnity they had for reimbursement. No creditor of Collins had any equitable right to anything growing out of the bridge contract until the bondsmen were indemnified. If necessary to do so, a bondsman may take an assignment of the contract, complete the work, and receive the pay, and no creditor of the contractor can be allowed to complain. *Tuttle v. Independent District of Harlan,* 62 Iowa, 422. If so, the surety surely has the right to advance money or incur obligations to complete the work, and indemnify himself by a mortgage or pledge of the contractor's property; and nothing short of saving him harmless for having become surety will indemnify him. In this case the acceptance of the bridge was not procured by Collins. It was done by the assistance of the bondsmen, and the mortgage is a lien for such an amount as they advanced or became liable for.

This first mortgage was taken before the plaintiffs even commenced an action against Collins, and at a time when their claim was a mere chose in action. The second mortgage is not even a necessary factor in determining the case. It was no abandonment of the first mortgage. It was a mere bill of particulars of what the bondsmen had advanced to their principal to carry on the work.

It appears to us that this disposition of the case is eminently equitable and just. The plaintiffs were the holders of a claim against an insolvent and irresponsible debtor. If they are allowed to subject the land in question to the payment of their claim, the bondsmen must go without indemnity, and the plaintiffs succeed in collecting a worthless claim

at their expense.    It is in effect requiring the bondsmen to pay a debt which they never contracted.    The plaintiffs are in no worse position than they would have been if no bridge had been built.                                                        REVERSED.